I thought he was here all day. Mr. Hemingway, whenever you're ready. You're waiting for your co-counsel to get in here? Okay. It's fine, you can get him up to the, you want him to be there taking notes? Good morning, may I please report, my name is Michael Hemingway, I'm part of the Consolidate Appeal with Mr. Bostick dividing the argument. I'll be focused primarily on the issue number one, which relates to count number three. And the argument we've made is that this needs to be resolved under a statutory construction issue argument. The government charged both appellants in count three of the indictment with the substantive offense of manufacturing marijuana while knowingly and intentionally using a hazardous substance on federal land that harms or creates a serious risk of harm to animals or the environment. They were also charged with conspiracy to manufacture marijuana, a thousand plants or more. The actual count of manufacturing marijuana, a thousand plants or more. And then there was a fourth count involving Mr. Cortez about illegal re-entry. The focus, though, and the argument I've made in the briefing is that this issue about the statutory construction has to be resolved about the issue specifically about what knowingly means in this statute. Statute, of course, is 21 U.S.C. You said they had to know it was on federal land. That's right. That's the question, isn't it? That's really what it comes down to. It's the sections 841A, 21 U.S.C. 841A1 and 841B6, and it's the B6 language that is the focus. It's serious. It's a separate offense in that it carries up to five years in prison in addition to the other offenses. And the question then is how to interpret that land. The argument is it's clearly, I would say it's not just jurisdictional, but it's substantive as well. The jurisdiction, the federal jurisdiction is already in the case under 841A1 in the fact that it was a conspiracy and the actual substantive offense. This 841B6 was subsequently added, and specifically the intent was to criminalize. You don't contest it. You didn't contest that it was federal land. You just said they didn't prove it. Your client knew it was federal land. Exactly. Is that right? And I think certainly for the purposes, that's what we're, I was not trial counsel, but I think that the record is very clear about that is that they proved that these two men were on the land. It was federal land. I think the record shows that there was no markings that it was federal land. There was no fences, no signs, no trespassing signs, nothing to indicate that this was in fact federal land. And there was another character involved. His name was Jesus, without a last name, who brought these two defendants up to this piece of land in the federal park land. Well, isn't the essential problem with your argument that if you, that unlike the case on which you rely, particularly that opinion of Justice Ginsburg for the Supreme Court, that your interpretation is not necessary to prevent somebody from being tried and convicted for innocent conduct? Well, that's, I mean, I think that's what the. His conduct wasn't innocent, whether it was on federal land or not, right? That's, that's true. And I think that's what the, the, the court excitement video has to, has to do with about. Indeed, so that's why it's distinguishable from this case. Yes. But I think the, the, the language here is specifically the intent was to I don't think there's a mens rea real issue in this because the mens rea is already there. They're, they're committing the federal offenses of manufacturing marijuana. The issue, I think what, what's trying to be protected is a, is a absolute element of the offense of, of polluting or using these chemicals on federal land. There's no, the, the. I thought your argument was that he had, that the government had to and had not proved that they knew that this was federal land. That is the, the argument, but it only goes somewhere if in fact they needed to prove that. I think the. And I'm suggesting, well, maybe, maybe I'm not clear. You go ahead. I mean, I, I think the. I don't see how you can line this up with excitement video. Well, I think it's actually perhaps more lined up with a Flores Figueroa case. That has to do with the Mexican who came to the United States and had a fake ID. And the issue there is whether or whether the government had to prove that the appellant in that case knew that the ID actually belonged to another person. So there was this knowledge requirement that went beyond just simply the possession of the false identification. It was some social security numbers that the language of the statute indicated that it, whether or not it belonged to a real person or not. The court in that case ruled that in fact, that was an element that in fact they had to prove. I think what's going around and around on these cases, I think part of what the court always looks at is the actual construction of the statute. And I think that's significant here. I think the language in the Flores case talks about the language in the statute. And where in fact the actual language of knowing appears. The knowingly language appears not only to the using the hazardous substance on, but just right next to that is on federal land. So we would certainly submit that that's a separate element that has to be proven that they knew that they were on federal land. The other issue, I think the excitement video cases talks about the, this other element of whether it's innocent conduct or not, is when there's a question about whether it's a jurisdictional issue only. In this case, we think there's clearly a jurisdictional issue, but that's not the only issue. It's a substantive issue about whether or not that this was done on federal land. There's not, there's, for instance, there's no, the statute is not protecting privately owned land. There's not a concern about putting chemicals on privately owned land. It's, it's very specifically that- That would be, that would be illegal as well. Not according to the, it's not written within the statute. Not this statute, but it's illegal activity. So you don't have, that's the point I was trying to make, that it's different than excitement video. Because without the statutory interpretation there, you wouldn't have had, you'd be punishing legal activity. Here, you wouldn't be punishing legal activity. Right, and clearly the argument, the basic argument I've been making is simply that that, that knowledge applies to the federal. Putting it aside excitement video, it in fact goes to the construction of the statute. Thank you. Thank you. May I please report? I'm Darren Bostick. I represent Joaquin Baruman Cortez. There is one distinction I do want to make when we're talking about excitement video. And this really goes more to the co-defendant really than Mr. Cortez. Mr. Cortez, as you may recall, actually received the mandatory minimum, which was set forth under count one. But anyway, I do want to address one thing. When the court talks about there being nothing legal about it, what that particular part of the statute deals with under B6? It does what? What it particularly deals with is the fertilization and the poisoning aspect of it. And then it goes back to and basically says in respect to any of these. And one thing that I did find just kind of intriguing as a mental exercise, if I went out and I bought all these fertilizers, the exact same stuff that was present in this case, and then I have a garden in my backyard and I'm putting the exact same stuff down, there's nothing illegal about that. It's only that part of it that if you put it on federal land, that it then becomes a crime in and of itself. So it's not really necessarily the fact that it's marijuana, but the fact that you're adding poisons, you're adding fertilizers, you're adding non-natural elements to it. That's where I think it gets a little bit closer to where excitement is of if this was being done. You do have that. That's very imaginative. Let me try. The real issue that I am here dealing with on Mr. Cortez, Mr. Cortez came to the United States, was subsequently deported, and then at some point came back. Just to tell you very briefly, he grew up on a farm. This is in the pre-sentence report that was filed as part of the appendix. Had sixth grade education, very low education. Left, ended up in various different places, ended up back into this area. When he was arrested, at the time, he basically was taken into custody. He was then read as Miranda, agreed to cooperate with the government, went into a room, and was actually interviewed by Officer Jackson. There was an interpreter present. He was asked a whole series of questions. When we did the sentencing on Mr. Cortez, Judge Conrad inquired about different types of things. The government had said, well, he talked about he added some fertilizer to plants, but he didn't talk about adding poison and rat poison and other things. So I went back and actually brought it up to Judge Conrad and said, Judge, here's the questions he was asked. Here is what his answers were. He answered every single thing that was asked of him. Answered all of it truthfully. That is the big point, and that's the reason, and as the court, I'm sure, has recognized, Judge Conrad actually did give him the reduction for acceptance of responsibility. And even though we went all the way through a three-day jury trial, because a couple different things, and I looked at what the case law was, and it basically dealt with acceptance of responsibility. It's very much dependent upon are you consistent before your trial as after your trial, if you happen to go through a trial. If you fit into that narrow scope, you can still get acceptance of responsibility. Judge Conrad granted that. What we were also requesting was that he also get the benefit of safety valve reduction, and a reason for that is when you look at what his statement was, what his level of education is, very low education. I think there was a lot of confusion going on in his mind as to what was really going on. He answered everything beforehand. I met personally with the probation officer, and as the appendix indicates, when Rachel Funkhouser was put up to testify, she states it was virtually word for word what he said beforehand. He admitted that everything that was presented at trial against him, which included all the information concerning the fertilizer, concerning rat poison, everything at trial that made him look guilty, he agreed was correct. And we had a rather interesting colloquy between myself and Judge Conrad when he looked at me and said, Mr. Bostic, why did you take this to trial? And I really did not have a very good answer. Legally, my client is required to come to the table, advise the government no later than the time of sentencing of everything that he knows about. Our position is he really did. Very uneducated. Just doesn't have very much information. That seems to me it was incumbent upon you to tease out what he didn't know. I mean, you know, you adjourned the session. I don't know that you did it, but his counsel did. And, you know, I wasn't there. It may not be possible, but to put on the record I don't understand you. I don't know anything. I was asleep all the time. Whatever he's going to say. But we don't have that. We have you adjourning the record when we have a really incomplete record. We have his counsel doing it, as I say. I'm not sure it's you. I can characterize my discussions with him as difficult. He's trying to draw out information. I can very much describe it as that. And I don't know if it was a language. It might be difficult because he didn't understand you. Or it might be difficult because he didn't want to give the information to the government. You know? Well, these are meetings with just me and the interpreter. And we had numerous of those. Are you court-appointed? Yes. See, I think that a lot of folks that are so well-educated think, well, you're court-appointed. You're through the government, too. They're all the government.  You understand what I'm saying? So I'm not sure he was distinguishing, this is my man, and I can tell. In any event, we will submit that he basically did provide everything that he was supposed to provide according to the statute, and he should have gotten it. We would ask the court to approve it. Let me go back a minute to the other issue on the federal land knowledge question. Yes. Do you agree that that is reviewable here only for plain error? I do. There was a lot of other things going on, trial strategy-wise. Thank you. Thank you. Ms. Wright, sometimes in your argument, can you talk about Flores-Figueroa and how you would distinguish this case from that one? Absolutely, Your Honor. Thank you. So I'm Elizabeth Wright, Special Assistant U.S. Attorney for the Western District of Virginia on behalf of the United States. May it please the Court. And I will just go ahead and jump into the distinctions from Flores-Figueroa because I think the Court's questioning of the defense attorneys got into a variety of the points that I was planning to raise. So Flores-Figueroa and the Supreme Court's interpretation of Section 1028A in that case does not do anything to change the analysis here for a couple of reasons. First of all, Flores-Figueroa was not dealing with a jurisdictional provision. And in the context like we have here where we're dealing with a jurisdictional provision, the tradition is longstanding and clear that mens rea requirements don't traditionally apply to the element of an offense that gives the federal court's jurisdiction. Secondly, Flores-Figueroa was a differently worded statute in some really distinct ways. And it also is distinguishable from our situation here based on the legislative history that the Court was particularly concerned with. So in Flores-Figueroa, you have the same adverb knowingly than a verb and the object of that verb. And the Court was really addressing which parts of that object of the verb knowingly applied to. In this case, we have knowingly, the verb and an object, and then a separate jurisdictional provision in a prepositional phrase. So this is not comparable to the grammatical construction that was at issue in Flores-Figueroa. And we also need to note this key point about the legislative history. In each of these cases, Excitement Video, FIOLA, and the other cases that we've been talking about in the briefs, the purpose that Congress was attempting to serve through a particular element is key to the Court's interpretation of how the modifications in the sentence apply to that element. And in Flores-Figueroa, the Court reviewed the legislative history and found that the legislative history was clear that Congress was essentially limiting that additional penalty provision to apply to specifically more culpable conduct of using someone else's means of identification when you knew that means of identification belonged to someone else. In the legislative history, the examples that Congress had used pertained to dumpster diving and other conduct where the defendant was pretty much targeting another individual in choosing what identification numbers to use. And that was the particular harm that Congress was guarding against. In our case, by contrast, Congress was attempting very broadly to protect federal land through its enactment of Section 841b6. And even the quotes from the legislative history that the defendants highlight show that this focus was on the fact that federal land was being abused by people manufacturing marijuana and other drugs and the need to take care of our federal lands and protect them from this degradation and pollution. So given that different type of legislative history, this case is really different from Flores-Figueroa. And I'd note also that there are multiple cases that continue along the lines of all the cases that we cited, distinguishing excitement video and otherwise, after Flores-Figueroa. In United States v. Jeffrey, which was in 2011, this court said that Section 641's mens rea requirement wasn't affected by Flores-Figueroa. The other lines of cases about being able to know, needing to know about jurisdiction weren't affected by Flores-Figueroa. And even the involvement of a minor in certain offenses wasn't affected by Flores-Figueroa. So courts have really cabined Flores-Figueroa to its facts and its context of not applying to jurisdictional elements and also being specific to the wording of the statute that the courts were facing here. I want to respond then to a couple of other points. The government agrees fully with your question, Judge Moss, about whether, for your point, that there's no issue of criminalizing otherwise innocent conduct in this case. And that was the particular concern that was animating excitement video. So we truly are not within the sort of confines or the danger of what the Supreme Court was attempting to guard against there. The conduct that the defendants were engaging in here was first premised on violation of A-1, so being actively engaged in a drug manufacturing crime. And also they were using these poisons and chemicals in a manner that was specifically harmful to the environment. And all of that had to be proven. So we aren't within the context of excitement video. And I also want to note that this provision is solely jurisdictional. The on federal land language is just a jurisdictional provision. The defense argues that because Congress generally has jurisdiction over drug crimes through the Commerce Clause, this isn't a jurisdictional provision. But that argument is incorrect. Because for each additional offense that Congress defines, even in the context of drug crimes, there has to be a jurisdictional hook. And here the jurisdictional hook for doing these additional things and committing this additional offense while manufacturing marijuana is the fact that this occurred on federal land. Congress could not, or at least chose not to regulate, if someone sort of burns down their own house while in a meth operation or is doing this on their own land, that isn't within the purview of the statute. So here the on federal land language is purely jurisdictional. So under either the rules of law applicable to jurisdictional provisions or pertaining to the otherwise innocent conduct, there is not any sort of rationale in the law to apply the knowingly language here to the on federal land requirement. So it's crucial to your argument that we find that this is a jurisdictional provision. And I'm not so sure I understand why you think we need to because this is a federal criminal statute and generally those, as you say, we have jurisdiction under the Commerce Clause. So why do we have separate jurisdiction here? Why is this jurisdictional? I thought that you were making the argument that it had to be jurisdictional to give the federal government the right to criminalize this. Well, there are two, I apologize, I think I may have confused the situation, there are two bases sort of independently on which the government, on which the knowingly requirement does not apply to the on federal land. The first is that it's just a jurisdictional provision and the second is that it does not criminalize otherwise innocent conduct. I understand the latter, but tell me about the former. On the former... Because if it wasn't jurisdictional you would lose, right? No, we would not, Your Honor, because there is no criminalization of otherwise innocent conduct. The fact that it's a jurisdictional provision is just an additional basis and reason of how we know that Congress did not intend the mens rea requirement to apply. Flores-Figueroa, it's not, there is no otherwise, it isn't within the, it isn't, are you taking the position that it's not jurisdictional? What is your, I still don't, then I don't understand what your whole argument's been. How do you distinguish it? Because it isn't like excitement video, right? Flores-Figueroa is different. But Flores-Figueroa was, did not address jurisdictional provisions. So there are substantive and jurisdictional... That's what I'm trying to get you to say to me. How do we know that this addresses a jurisdictional provision? What is it that, why do you need a jurisdictional provision here if you're a federal criminal law? Because we usually do it under Commerce Clause, that gives us jurisdiction. That's a question, Your Honor, because the Supreme Court in FIOLA used the language of, it isn't enough to just be a jurisdictional provision in order to get under the line of precedent that says that mens rea requirements don't apply to jurisdictional provisions. In order to get under that line of precedent, the provision needs to be jurisdictional only. So we have two different parts of our argument here. The first is that this position is in fact jurisdictional only. But also, even if it weren't jurisdictional only and was a substantive provision, then we get under the cases such as Excitement Video and Flores-Figueroa that say that when you are not criminalizing otherwise innocent conduct, we similarly don't apply the mens rea requirement to an element like this. So there are two separate strands of cases here. And the first case is determined by such cases as Cooper, that was dealing with other jurisdictional provisions like effects on interstate commerce and polluting waters of the United States. And then under the second prong for otherwise innocent conduct, were governed by this Court's decision and judgment, in your opinion, in United States v. Cook. So there are two different paths. I do understand that. And I thought I understood your argument. But then you sort of wound it all up, and I wasn't sure I did understand it. So tell me, leave aside the other bad conduct and know that that's not, I know where that is now. Understood, Your Honor. And they say, oh, that doesn't matter because look at this 2009 Supreme Court case. Well, I think the Flores-Figueroa argument is along the lines of the otherwise innocent conduct. And it doesn't change any of the analysis that courts go through in distinguishing Excitement Video. And United States v. Jeffrey is, of course, a good example of that. And there are other cases that continue to apply these distinctions against Excitement Video after Flores-Figueroa. So that case doesn't affect this analysis. But the jurisdictional prong comes in basically responding to an argument that Mr. Hemingway made and that was in the defendant's reply was that we could only have the sort of jurisdictional only separate basis to have the government succeed here if there isn't another basis for federal jurisdiction under B-6. And the defense argues that because the courts already have federal jurisdiction because this is a drug crime, we don't get under FIOLA with FIOLA saying that knowingly doesn't apply to the jurisdictional component of a statute. So my only point in that regard, Your Honor, was that because this is only jurisdictional provision, because Congress needed to have jurisdiction for this additional conduct of doing these things with the chemicals while manufacturing marijuana, that they can't get out of the realm of FIOLA on that basis. And I do agree as well, and Mr. Bostic did address this, that the review of this issue is for plain error because this was not preserved below. There were cases cited again in the reply by the defendants that talked about review of statutory questions being de novo, but all of those cases again, too, were not, I mean, they were dealing with the distinction between sufficiency of the evidence and statutory review. They weren't dealing with a waiver or other arguments such as we have here where the issue just was not raised below. I'll turn then briefly and talk about the safety valve and Mr. Berriman-Cortez. He was not entitled to application of the safety valve here, and there was certainly no clear error in the district court's finding that he did not meet his burden to show that he had provided all information to the government. As your question noted, Judge Mott, under the safety valve provision, there is the obligation to provide information. This is separate from the acceptance of responsibility, bless you, argument where it's enough and can sometimes suffice to be answering questions. Under the safety valve, the defendant is obligated to provide information. It has to be expansive information. The court's decisions and I do and otherwise refer to, I mean, volunteering information, giving a broad disclosure. It needs to include information about co-defendants' or co-conspirators' conduct, and it really is a different kind of test than what we're just looking at for sort of did the defendant answer the questions that were put to him. The arguments that Mr. Berriman-Cortez makes sort of improperly attempt to shift the burden to the government, but the burden was on him to affirmatively demonstrate that he had told the government whatever he knew. And here, this is in no way like a case where the government, where a defendant said something and the government did not believe that defendant, such as if a defendant were driving in a car and there was a box and he said he didn't know it contained drugs and he didn't know anything else about the organization and the government says they didn't believe them. This was a case where the evidence at trial and otherwise showed that Mr. Berriman-Cortez had been living at this marijuana go for months and he never provided information about the day-to-day activities. Those activities were especially important after Mr. Gonzalez-Vicencio testified and others said that he hadn't been there and that they had arrived only a week before and had done nothing, and that information contradicted the journals that had been found at the camp, the phone of Mr. Cortez in particular that included photographs of him even before the marijuana plants had been put in the ground and other things like that. So this is not a case where there's anything speculative about the information that the government maintains Mr. Berriman-Cortez had to provide. There were specific examples of information that Mr. Berriman-Cortez must have had that the government did not get. And even Mr. Bostic's arguments at the sentencing hearing showed that Mr. Berriman-Cortez had not answered these pretty basic questions about the time out at the marijuana grow operation. Mr. Bostic noted that we, quote, we really never got very much to the growing of the marijuana in the proffer that occurred. And he also said that the government was not sure if it was seeds or if the plants were already there or they were given small plants. And these were fundamental facts of the background of this marijuana operation where the information was simply not provided to the government. And given the requirements in IDU and the other cases along these lines, that was the defendant's burden to give this information to the government and his burden to show that he had, and that burden has not been met. So unless there are any further questions, I will rely on that in the government's brief. I think we understand your argument. Thank you very much. Thank you, Your Honor. Mr. Hemingway, do you have a rebuttal? No. I believe because we're alleging a review of statutory construction, a preliminary matter, that the standard is de novo as opposed to plain error. Well, it wasn't preserved. You didn't give the district court a shot at it. Well, I think it was initially – we're not arguing a jury instruction issue that wasn't preserved. This is a preliminary issue of statutory construction, and I think that would lend itself to a de novo review. And that's – once again, that is the argument, and that's what we're looking at is the statutory construction. I think – Do you think you can raise that for the first time on appeal? I believe so because we're going right to the statutory construction. The issue about whether it's solely jurisdictional issue, the language here, we're submitting that it's both. There's clearly – there's federal jurisdiction there under the statute 841A1, and that – so it's not purely – it doesn't trigger the jurisdictional standard there. It's really both. I think the Flores-Figueroa case speaks very clearly to this issue, and I think it ultimately comes down to the language of the statute. I think that's right. It does come down to the language of the statute, and the language is different. Yeah, and I think the – and the language there – It's not structurally the same. Yeah, and the language there is as a matter of ordinary English grammar. It seems natural to read the statute's word knowingly as applying to all the subsequently listed elements of the crime. And it makes a point of not – it doesn't mean they're separated by one or two words or seven words. It means that knowingly applies to each one of those elements. And I think the language of the actual statute of 841B6, it talks about knowingly or intentionally uses the poison, then just, you know, describe poison, chemicals, other hazardous substances on federal land. It's all within a – But the on federal land is a different clause altogether. Like, you're young, so you don't diagram sentences anymore. Well – But if you did, it would be a separate clause. I was never very good at it. I know that. But I'm not seeing a – And that is different. I'm not seeing a comma. Maybe it's not different than – it doesn't matter whether there's a comma or not. It is on, right? Right. But it's so – But maybe that's not a difference that makes a different result. But it is a structurally different statute than the Flores-Fedora. Right. And I believe the structural statute of those other cases, the word knowingly is much further away from the contact, the words that it's actually applying to. So that would just, once again, reinforce the plain grammar and English reading of that statute. I think that's really our focus and our argument on that is that it comes down to how that statute is read. In the Supreme Court's case, it's knowingly right next to transfers, possesses, or uses. So it's not – it can't be much closer than that. In the Flores case? Yeah. But the language that it talks about at the very end of that sentence is a means of identification of another person. And that was the issue, was whether the knowingly applied to whether the defendant was using – whether the defendant knew that person was really a person. So, in fact, that language is at the very end of the sentence. And how is that – okay. Thank you. No. Thank you. Thank you. Thank you very much. Both of you were court-appointed. Is that not correct? We very much appreciate your efforts for your clients, and we couldn't do our work without you. So we very much appreciate it. We will ask the clerk to adjourn court, and then we will come down and brief the board. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Robert B. King, Barbara Milano Keenan